POTTER COUNTY v. BOESEN. (No. 1094.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 10, 1917. Rehearing Denied Feb. 7, 1917.)

1. NEWSPAPERS ⊚⟺2—CONTRACT WITH COUNTY—PUBLICATION OF DELINQUENT TAX LIST—PLEADING.

Where a county contracted to pay a publisher 25 cents per description for publishing the county delinquent tax list, payments to be made as delinquent taxes were paid into the hands of the tax collector, the amount was due and payable within a reasonable time after publication, and, in the publisher's action, it was not necessary for him to allege that any of the delinquent taxes had been paid to the county.

[Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 14, 15; Dec. Dig. ⊚⟺2.]

2. NEWSPAPERS ⊚⟺2—CONTRACT WITH COUNTY—PUBLICATION OF DELINQUENT TAX LIST—PLEADING.

The amount being due as a matter of law within a reasonable time, the county's failure to collect the taxes was a fact not necessary to be alleged.

[Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 14, 15; Dec. Dig. ⊚⟺2.]

3. NEWSPAPERS ⊚⟺2—CONTRACT WITH COUNTY—PUBLICATION OF DELINQUENT TAX LIST—REMEDY OF PURCHASER—MANDAMUS.

Where the amount due the publisher was payable out of the fund set aside for the current expenses of the county, it having failed to make collection within a reasonable time, the publisher was not required to await the collection of the delinquent taxes, penalties, and costs, nor resort to mandamus proceedings to compel the county officers to collect such taxes.

[Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 14, 15; Dec. Dig. ⊚⟺2.]

4. NEWSPAPERS ⊚⟺2—CONTRACT WITH COUNTY—CONSTRUCTION BY PARTIES.

The publisher's act in receiving ·fees from the collector from time to time as taxes were collected could not be considered a practical construction of the contract with reference to the time of its maturity in his action to recover for publication of the list.

[Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 14, 15; Dec. Dig. ⊚⟺2.]

5. COUNTIES ⊚⟺53—CONTRACT—REFORMATION.

Neither the county nor the publisher could have the contract reformed in the district court in accordance with the expressed intention of the parties when it was made, because the commissioners' court of the county was a court of record, speaking through its minutes, and not by the mouths of its members, and the proper method to reform the contract was to reform its minutes by motion in the court, and not by allegation and proof in another tribunal.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 66–70; Dec. Dig. ⊚⟺53.]

6. NEWSPAPERS ⊚⟺2—CONTRACT WITH COUNTY—ESTOPPEL.

The publisher of a county's delinquent tax list of about 14,000 items, pursuant to contract, at 25 cents per description, was not estopped from claiming the contract price because a reasonable compensation for making the publication was a sum not exceeding $1,000.

[Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 14, 15; Dec. Dig. ⊚⟺2.]

7. COUNTIES ⊚⟺113(4) — DELINQUENT TAX LIST—PUBLICATION—CONTRACT FOR — STATUTES.

Vernon's Sayles' Ann. Civ. St. 1914, art. 7687, provides for the publication of delinquent tax lists by counties and that a fee of 25 cents shall be taxed against each tract or parcel of land advertised, which when collected shall be paid into the county treasury. Article 7691 defines the fees which shall be collected by the several county officers in event of suit, and provides that, where two or more unimproved town lots shall belong to the same person, and shall be included in the same suit, court costs shall be taxed against all such lots collectively. Held, that the commissioners' court of a county had the right to contract to pay for publication of its delinquent tax list 25 cents per description, and that the publisher's recovery against the county was not limited by the provision of article 7691; it having no bearing on the matter of contract for publishing the delinquency list.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 174, 178; Dec. Dig. ⊚⟺113(4).]

8. NEWSPAPERS ⊚⟺2—CONTRACT WITH COUNTY—PUBLICATION OF DELINQUENT TAX LIST—ACTION FOR PRICE—PROOF.

In an action against a county by the publisher of its delinquent tax list whom the county had contracted to pay 25 cents per description, payment to be made as delinquent taxes were paid the tax collector, proof of the fact that by the exercise of reasonable diligence the taxes could have been collected was not essential.

[Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 14, 15; Dec. Dig. ⊚⟺2.]

9. CONTRACTS ⊚⟺176(10)—TIME FOR PERFORMANCE—QUESTION OF LAW AND FACT.

The general rule is that it is a mixed question of law and fact as to what constitutes a reasonable time for the performance of a contract when no time is fixed by its terms.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 956, 979; Dec. Dig. ⊚⟺176(10).]

10. EVIDENCE ⊚⟺41—JUDICIAL NOTICE.

The court judicially knows that there are four terms of the district court held in Potter county annually, and that suits for the collection of delinquent taxes have precedence upon the trial of causes, when executions could have been issued on judgments, and when sales could have been made.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 56–60; Dec. Dig. ⊚⟺41.]

11. ACTION ⊚⟺62—PREMATURE FILING—EFFECT OF AMENDMENT.

Where a suit was prematurely brought, but plaintiff filed an amended petition two days after the cause of action matured, it was the duty of the trial court to tax all costs prior to the filing of the amendment to plaintiff, and to proceed to judgment, rather than to dismiss the case because originally filed prematurely.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 718–721, 723; Dec. Dig. ⊚⟺62.]

12. COUNTIES ⊚⟺216—REJECTION OF CLAIM BEFORE MATURITY—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1366, providing that no county shall be sued unless the claim upon which such suit is

founded shall have first been presented to the county commissioners' court for allowance, and such court shall have neglected or refused to audit and allow the same or any part thereof, a claim against a county for publishing its delinquent tax list could be presented to the county commissioners' court for allowance before maturity, and could be allowed by the court as a valid claim and paid at a later date when it matured, so that its rejection entitled the claimant to file suit before maturity under the same rule.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 346; Dec. Dig. ☞216.]

Appeal from District Court, Potter County; William Boyce, Special Judge.

Action by P. E. Boesen against Potter County. From a judgment for plaintiff, defendant appeals. Judgment affirmed.

M. J. R. Jackson, Ray C. Johnson, and C. E. Gustavus, all of Amarillo, for appellant. Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellee.

HALL, J. Appellee, Boesen, filed his original petition in this case August 13, 1913. It was tried upon a second amended original petition, filed April 24, 1916. As stated in the opinion upon the former appeal, reported in 173 S. W. 462, the action was to recover compensation for the publication in the Amarillo Weekly Herald of the delinquent tax record of Potter county for the years 1885 to 1905, inclusive, amounting to the sum of $3,-425. The contract between appellant and appellee contained this stipulation:

"Payment for publication to be made as delinquent taxes are paid into the hands of the tax collector."

Appellee alleged in the alternative that various periods from two up to and including eight years after the publication of the delinquent tax record constituted a reasonable time within which appellant could have performed the contract by causing the delinquent taxes to be collected. It is alleged that the claim for compensation for publishing such list was presented to the commissioners' court of appellant county, and rejected on August 12, 1913, and that this suit was filed the next day.

Appellant answered by general demurrer, general denial, and special answers, some of which were stricken out upon demurrer, and the case submitted to a jury on three special issues, as follows:

"No. 1. State whether or not the plaintiff, P. E. Boesen, within a reasonable time after the making of the contract above set forth, correctly published said delinquent tax list in the Amarillo Weekly Herald, a weekly newspaper published in Potter county, Tex., for three consecutive weeks? Your answer to this issue will be 'He did,' or 'He did not,' as your finding may be."

The jury answered: "He did."

"No. 2. You will, from all the facts and circumstances introduced in evidence, determine and say whether a reasonable time has elapsed from and after the publication of the delinquent tax record, if you find it was published, within which collection of the delinquent taxes referred to in said record should have been paid. Your answer to this issue will be 'It has,' or 'It has not,' as you may find. If you answer this issue in the negative, you need not answer the third special issue submitted."

The jury answered: "It has."

"No. 3. If in answer to the foregoing special issue you find that a reasonable time has elapsed, then you will determine and fix the date of the expiration of such reasonable time within which such delinquent taxes should have been collected from and after the date of such publication, and will state in your answer to this issue the date that you so find. Your answer to this issue will be given by simply stating the specific date of the expiration of such reasonable time as you may find the same to be."

The jury answered: "April 22, 1916."

The first assignment is that the court erred in overruling the defendant's general demurrer, and urges as the first proposition that the petition was insufficient because the contract of employment was conditioned that appellee should be paid for his services as delinquent taxes · were paid into the hands of the tax collector, and such payments were conditions precedent to any liability of appellant, and no allegation appeared in the petition that payments had been made.

[1] We held in our former opinion, and still hold, that the amount claimed was due and payable within a reasonable time, and therefore it is not necessary to allege that any of the delinquent taxes had been paid to the county.

[2] By the second proposition appellant insists that the petition was insufficient because the contract pleaded and made the basis of recovery stipulated for payments to be made from a definite source and from funds received in the collection of delinquent taxes and contained no allegations of failure or default on the part of appellant as to the collection of such taxes, and without such allegations no obligation of appellant would arise to make payment to appellee within a reasonable time. The amount being due as matter of law within a reasonable time, the failure of appellant to collect the taxes was a fact not necessary to be alleged. Under the law appellant owed the duty to appellee to make collection within a reasonable time, and appellee's right of recovery depends upon the lapse of a reasonable time, and not upon the fact of collection.

[3] By the third proposition appellant insists that appellant is not liable for the negligence of its officers or for their failure or omission to discharge their duties, and that appellee's recourse was to mandamus and require the county officials by legal proceedings to discharge their official duties. We think the amount due appellee was payable out of the fund set aside for the payment of the current expenses of the county. This being the case, of course, appellee should not be required to await the collection of the delinquent taxes, penalties, and costs. As a matter of law, his debt being matured within a reasonable time, he was not required to resort to mandamus proceedings. Appellee's suit against the county is not based upon the

negligence of its officers, but upon a contract which the jury found matured April 22, 1916.

The action of the court in sustaining the plaintiff's general demurrer to certain paragraphs of the defendant's second amended original answer is made the basis of the second assignment. The first proposition under this assignment is, in effect, that the contract between the parties with reference to the time and manner of payment and as to any direct and personal liability of the county was ambiguous, indefinite, and uncertain, and appellant's allegations in the third paragraph of its answer of such ambiguity and uncertainty, and of the negotiations leading up to the making of the contract, and of the interpretation, construction, and action of the parties thereon, subsequently were proper matters of defense. In the third paragraph of the answer it is alleged, in substance, that the contract provides no definite and certain time for payment, and the provision that payment for publication should be made as delinquent taxes were paid into the hands of the collector means, and was understood by the members of the court and plaintiff to mean, that payments for such work were to be made to plaintiff out of, from, and as the fees of 25 cents "per description" were collected from such delinquent tax list; that plaintiff appeared personally before the commissioners' court, and in the negotiations it was contemplated, agreed, and understood by plaintiff and the court that, in consideration of the allowance to plaintiff of the legal maximum of 25 cents per description for publishing said delinquent tax list, the reasonable cash consideration for such publication being not exceeding the sum of $1,000, which last-named amount defendant's current revenues were insufficient to pay, as plaintiff well knew and understood at the time, no legal charge, liability, or responsibility on the part of the defendant to pay plaintiff any amount accruing for such publication would arise in any manner except and unless the funds for such payment would accrue and accumulate from the collection of such delinquent tax list of the said sum of 25 cents per description, and that then and in that event only as the funds accumulated from such source the same would be paid over to plaintiff. It is further alleged in the third paragraph that plaintiff and defendant so recognized, construed, and acted upon the terms and provisions of said contract for many years afterwards, defendant paying to plaintiff from time to time the said 25 cents per description as collected which was accepted by plaintiff after he had checked up the reports of the tax collectors and verified the same, that the proposition and acceptance constituting the contract does not correctly and accurately speak the real agreement and contract between the parties, and that the omission of proper terms, provisions, and stipulations in said proposition and acceptance were left out and omitted through the mutual mistake of plaintiff and defendant, and through accident in not clearly and properly expressing the terms of the contract and agreement, and it asks that the contract be reformed so as to properly and correctly embody and express the true agreement between them.

[4] The substance of the contention under the first proposition of the second assignment is that the practical construction of the contract by the parties as alleged should govern, and the fact that appellee had from time to time accepted such fees of 25 cents, as they were collected, rebuts the idea that the contract should mature within a reasonable time. The act of appellee in receiving from the tax collector the fees of 25 cents from time to time must not be considered as a practical construction upon his part of the contract with reference to the time of its maturity. He was entitled to his compensation as soon as it could be collected, but it does not follow that by accepting it as it was collected he would not be entitled to insist upon the collection and the payment to him of the whole amount due within a reasonable time.

[5] It is further insisted under this assignment that the allegations with reference to mutual mistake in the formation of the contract and the effort on the part of the appellant to have the same reformed in accordance with the expressed intention of the parties at the time the contract was made were proper matters of defense, and that the demurrer should not have been sustained to it. The case of Gano et al. v. Palo Pinto County, 71 Tex. 99, 8 S. W. 634, was one in which the appellants alleged that in the formation of the contract with Palo Pinto county a material term was omitted, and they sought to reform the contract and make it correspond with the understanding at the time it was entered upon the minutes of the court. Gaines, J., said:

"It seems to us that it was the duty of Veal, Haynes, and Coruthers to look to the order as actually entered before beginning the discharge of the work, and if the contract, as set forth in the entry, was not in accordance with the terms of their offer, to decline to proceed until it was properly corrected. The commissioners' court is a court of record, and speaks through its minutes, and not by the mouths of the members of the body. The proper method to amend the minutes when they fail to speak the truth is by a motion made in that court, and not by allegation and proof in another tribunal in which a litigation concerning its orders may arise."

We think this holding would preclude appellant equally with appellee from having the contract reformed in the district court.

[6] Appellant further contends under this assignment that, because a reasonable compensation for making the publication was a sum not exceeding $1,000, that appellee, by agreeing to accept 25 cents per description, is estopped from claiming any such sum. We

do not assent to this contention. There is no element of estoppel in it; it is simply a question of contract.

[7] The fourth proposition under this assignment is that under the statutes of this state appellant could not make a valid contract with appellee for the payment of more than 25 cents per tract for publishing said list; and where two or more unimproved lots are owned by the same person, a tract under the statute consists of ten or less of such lots. Appellant alleged, in substance, that the delinquent tax record of the county had already been prepared at the time the contract between the parties was entered into; that plaintiff saw and examined such record and was familiar with it, and that the record showed that a large per cent. of the taxes delinquent were assessed against town lots in the city of Amarillo, in said county, and that the assessment had been made against such lots separately, many of them against unknown owners; that in truth and in fact most of said town lots were vacant and unimproved property, and in numerous instances the same person owned two or more of said lots, whereby a suit for the collection of such taxes would involve many lots in the same action against the same person; that under the law the commissioners' court was not authorized to pay more than 25 cents per tract for the publication of such list, and, as defined by the statute, a tract with reference to unimproved town lots meant two or more of such lots, not exceeding ten. Wherefore the plaintiff was not entitled to recover, if at all, the full amount sued for. The statutory provisions upon which this paragraph of the answer is founded are contained in articles 7687 and 7691, Vernon's Sayles' Civil Statutes. The first of these articles requires the commissioners' court to cause the publication of the delinquent tax list. Baldwin v. Travis County, 40 Tex. Civ. App. 149, 88 S. W. 480. By way of reimbursement to the county it is provided in the article that a fee of 25 cents shall be taxed against each tract or parcel of land advertised, which, when collected, shall be paid into the county treasury. This article also limits the power of the commissioners' court to contract for the publication of such list to not exceeding 25 cents for each tract. The effect of this article is to make it the duty of the commissioners' court to publish the list at all events and at any price obtainable, not to exceed 25 cents for each tract or parcel of land so advertised. In the light of these provisions, we think the commissioners' court had the right to make the contract sued upon, and that appellee's recovery is not limited by the provisions contained in the second article referred to, as follows:

"Provided, that where two or more unimproved city or town lots belonging to the same person and situated in the same city or town shall all be included in the same suit and costs, except those of advertising, which shall be twenty-five cents for every ten lots, or any number less than ten, taxed against them collectively just as if they were one tract or lot."

Suppose an extensive addition to any city lying within the city limits and made up almost entirely of unimproved lots belonged to one person, and that the taxes were delinquent upon the entire addition; it would be a difficult matter for the commissioners' court to secure a contract with any publisher to publish a list of such lots for a fee of 25 cents for each tract of ten lots, and the Legislature evidently had such a condition in mind when the first article was enacted. The first article relates exclusively to the matter of publishing the list and the details incident to its publication, and the proof of such publication.

Article 7691 defines the fees which shall be collected by the several county officers in the event of a suit, and the provision that, where two or more unimproved town lots shall belong to the same person, they shall be included in the same suit, in effect declares that the court costs shall be taxed against all such lots collectively. This proviso, in our opinion, has no bearing whatever upon the matter of the contract for publishing the list. That part of the provision directing that the costs, "except those of advertising, which shall be twenty-five cents for every ten lots, or any number less than ten," simply limits the authority of the court to tax up as court costs against the owner of the lots more than 25 cents per tract of ten lots or less, and has no connection whatever with the provision in article 7687 for the taxation of a fee of 25 cents per tract, or parcel, as cost of publication. The court did not err in sustaining the demurrer.

[8] Appellant assigns as error the action of the court in refusing to instruct a verdict in its favor, and insists that there was not sufficient testimony to show that the delinquent taxes could have been collected by the exercise of reasonable diligence at the time appellee's claim was presented to and rejected by the commissioners' court. As held by Eidson, J., in Baldwin v. Travis county, supra, article 7687, Revised Statutes 1911, requires the commissioners' court to make publication of the list, and this would seem to be regardless of whether any of the taxes are ever collected. In obedience to this statute publication was made in the instant case, whereupon appellee's rights under the contract attached. There was evidence from which the jury could have found that by the exercise of reasonable diligence the taxes could have been collected, but the proof of this fact was not essential. Two attorneys were introduced as witnesses, one of them testifying that five or six years was a reasonable time in which the taxes might have been collected. The other testified that collection might have been made within eight or ten years, but on cross-examination stated that in the suits he had been filing there had not been a single contest, and, assuming that there were 14,000 suits to be filed, that, if no contests were filed and no trial had,

there would be nothing to prevent taking judgment at the first term of the court, and that his statement that it would take eight or ten years to make the collections was based upon the understanding that there were over 14,000 suits; that if after the institution of the suits a number of the defendants should pay up, it would not be necessary to sue many more, and if a large number of the tracts could be included in one suit, the number of suits would, of course, be reduced, and his estimate of the time required to enforce the collection would be reduced accordingly.

[9] The general rule is that it is a mixed question of law and fact as to what constitutes a reasonable time for the performance of a contract when no time is fixed by its terms. Some of the authorities hold that it is always a question of law, and others that it is always a question of fact. The better rule seems to be, however, that it is a question of fact for the jury unless there is no controversy over the facts, when it is a question of law for the court. Hart v. Bullion, 48 Tex. 279; 6 R. C. L. p. 896, § 283; Morse v. Bellows, 7 N. H. 549, 28 Am. Dec. 372; Williams v. Powell, 101 Mass. 467, 3 Am. Rep. 396; Lewis v. Worrell, 185 Mass. 572, 71 N. E. 73; Loeb v. Stern, 198 Ill. 371, 64 N. E. 1043; 2 Elliott on Contracts, § 1550; Cotton v. Cotton, 75 Ala. 345; Luckhart v. Ogden, 30 Cal. 547; Attwood v. Clark, 2 Me. (2 Greenl.) 249; Hill v. Hobart, 16 Me. 164; Echols v. New Orleans & R. Co., 52 Miss. 610; Turner v. Snyder, 139 Mo. App. 656, 123 S. W. 1050; Wright v. Bank of the Metropolis, 110 N. Y. 237, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356n; Hedges v. Hudson River R. Co., 49 N. Y. 223.

[10] The undisputed facts are that there were 14,800 different lots, but in many instances a considerable number of the lots belonged to the same owners. The court judicially knows that there are four terms of the district court held in Potter county annually; that suits for the collection of delinquent taxes have precedence upon the trial of causes. The court could also have taken judicial notice of when executions could have been issued upon the several judgments and when sales could have been made. Under these circumstances, we are inclined to the opinion that the question of reasonable time was one of law rather than of fact. We do not, however, base the decision of this question upon that rule.

[11] Accepting the finding of the jury that a reasonable time for the performance of the contract on the part of the county expired April 22, 1916, by reason of which the suit was prematurely brought, still it appears that the appellee's amended petition was filed April 24, 1916, and under the authorities in this state it was the duty of the trial court to tax all costs prior to the filing of the amendment against appellee, and to

proceed to judgment rather than dismiss the case because it had originally been filed prematurely. 1 Ruling Case Law, p. 340, § 21; Culbertson v. Cabeen, 29 Tex. 254; Cox v. Reinhardt, 41 Tex. 594; Dalton v. Rainey, 75 Tex. 516, 13 S. W. 34; Burns v. True, 5 Tex. Civ. App. 74, 24 S. W. 339.

When the claim was presented to the commissioners' court, an order was entered which is in part as follows:

"The court having heard the evidence and argument upon said claim is of the opinion that said claim and offer of compromise and settlement should be rejected, and it is so ordered."

[12] Article 1366, Vernon's Sayles' Civil Statutes, provides that no county shall be sued unless the claim upon which such suit is founded shall have first been presented to the county commissioners' court for allowance and such court shall have neglected or refused to audit and allow the same or any part thereof. The statute does not provide, nor do we see any sound reason for holding, that a claim could not be presented to the court for allowance before its maturity. It may be allowed by the court as a valid claim and paid at a later date when it matures. The rejection of the claim by the commissioners' court, under the general rule, entitled appellee to file suit immediately. In any event we think the assignments insisting that the court should have dismissed the action because it was prematurely brought should all be overruled.

We find no reversible error, and the judgment is affirmed.

BOYCE, J., not sitting.