B. F. HALL ET AL. v. B. F. READ ET AL.

Decided January 25, 1902.

1.—Writ of Error—Time of Suing Out—Corrected Judgment.

Where judgment was entered in the trial court for an improper amount and by consent of the parties it was corrected in that respect without a motion, and a writ of error was sued out within twelve months thereafter, though not within twelve months from the original entry of the judgment, it was in time.

2.—Attorney Fees—Vendor's Lien Note—Subsequent Purchaser Without Notice.

Where a vendor's lien note provided for attorney fees, but such provision was omitted from the description of the note in the deed from the vendor and

from a trust deed executed by the vendee to secure its payment, the land could not be subjected to a lien for such fees in the hands of subsequent purchasers not having notice of such provision at the time they bought.

**3.—Notes—Clause Maturing on Default—Election.**

Evidence considered and held not to show that the placing of a note in an attorney's hand in connection with other paper which was to be collected and the proceeds credited on the notes was an election by the holder of the note maturing the principal because of default in the payment of interest due thereon.

Error from Tarrant. Tried below before Hon. W. D. Harris.

*McCormick & Spence,* for plaintiffs in error.

*W. P. McLean* and *D. W. Humphreys,* for defendants in error.

CONNER, CHIEF JUSTICE.—This proceeding is upon writ of error prosecuted by W. H. Parlin from a judgment of the District Court of Tarrant County perpetuating a writ of injunction sued out by defendants in error to restrain the sale of certain real estate situated in the city of Fort Worth, which had been advertised therefor pursuant to the terms of a deed of trust executed by one Emory Wales to Frank L. Shacket to secure a principal indebtedness of $8000 evidenced by promissory note, of which Parlin afterwards became the owner, made by said Wales for the purchase money of the property advertised for sale. The judgment was also in favor of defendants in error for $179.46, with interest thereon from the 4th day of February, 1896, at the rate of 6 per cent per annum as the sum in excess of said trust deed indebtedness that had been paid thereon to plaintiff in error by defendants in error as pleaded by them.

The judgment mentioned on its face purports to have been made and entered on the 14th day of March, 1900, and the petition for writ of error in this case was not filed in the District Court until the 26th day of March, 1901; apparently, therefore, the writ has not been sued out within twelve months from the rendition of the judgment as required by article 1389 of the Revised Statutes, and hence a preliminary question as to our jurisdiction has arisen that requires consideration. In answer to this apparent want of jurisdiction plaintiff in error has filed an affidavit, which is not controverted, to the effect that, while the trial was had and judgment was rendered and entered on said 14th day of March, 1900, it was then incorrectly entered as to the amount that defendants in error were entitled to recover as overpayment; the amount as originally entered being some $23 more than as now appears to have been adjudged. This error was discovered and suggested to counsel for defendants in error, who agreed to the correction, and without motion therefor, but with the approval of the trial court, caused the judgment to be corrected so as to show the true amount of recovery. This correction was so made on or after March 27, 1900.

While perhaps not very clear on principle that we should do so, we have finally concluded, upon the authority of Luck v. Hopkins, 49 Southwestern Reporter, 360, to entertain jurisdiction of the writ. In the case cited the Supreme Court takes occasion to say, in substance, among other things, that the period from which to compute the time within which a writ of error may be sued out is the date of the actual entry of the amended judgment, even though the amended judgment may be substantially the same as the judgment originally entered, and we think the proceedings here mentioned may be construed as fairly within the rule so announced. The judgment in its corrected form is the one before us, and the one to be enforced, if enforced at all. The judgment did not speak the true fact until the entry of the correction. The fact that the action taken was not upon motion therefor, as in the case of Luck v. Hopkins, should not, we think, be deemed material. It is conceded that the amendment was proper. The court would certainly have sustained a motion for correction, and having approved and authorized the corrected entries, we think the effect substantially the same as if done upon motion. At all events, in view of our conclusions upon the merits, the question of jurisdiction becomes practically unimportant. We therefore proceed to the disposition of the remaining questions.

Defendants in error were, upon valuable consideration, subsequent purchasers of the property from Wales "subject to the lien of $8000 secured by deed of trust superior to this title," as was recited in a deed to them, they not otherwise becoming parties to the original obligation of Wales to Shacket. Said note for $8000 was dated December 10, 1890, and made payable by its terms five years after its date, bearing interest at the rate of 10 per cent per annum, the interest payable semi-annually as it accrued. The note also contained a provision for the payment of an additional 10 per cent for attorney's fees in case the same was sued upon or placed in the hands of an attorney for collection. The deed of conveyance from Shacket to Wales, among other things, correctly described said note except that no reference was therein made to the provision for attorney's fees. This was also true as to the trust deed contemporaneously executed upon the land in question to secure the note; and defendants in error did not otherwise have notice of said provision for attorney's fees.

Said trust deed provided that in the event default should be made in the payment of any installment of interest, that the principal debt should at once become due and payable at the option of the holder or holders of the note, and that the vendees of said property should keep the house and improvements thereon insured for the benefit of the owner or holder of said note, and that in case of loss by fire the proceeds of the policies, or so much thereof as should be necessary, should be applied in liquidation of said indebtedness.

Defendants in error paid the semi-annual installments of interest with varying punctuality as they accrued until the 10th day of June,

1895, at which date an installment was due, and was not paid at the time the building situated upon the lot in controversy was destroyed by fire, which occurred about the 2d day of July, 1895. The insurance on the destroyed property amounted to $9000, and the policies, together with said note, were in the possession of an agent of plaintiff in error. After the loss aforesaid defendants in error promptly made all necessary proofs of loss, which were forwarded to said agent, who in turn, soon thereafter and several months before the maturity of the note by its terms, delivered said note together with said policies of insurance and proofs of loss to Messrs. McCormick & Spence, attorneys at law, who collected the full amount of insurance as stated, and applied the same in payment of said $8000 note and interest, and to a further sum of $840 claimed by them to be due as attorneys' fees. Said insurance was in excess of the principal and interest due upon the note in the sum adjudged to defendants in error in this suit, but was insufficient to liquidate the principal, interest, and attorney's fees as in fact applied by McCormick & Spence. Plaintiff in error, therefore, in August, 1896, caused the lot in controversy to be advertised for sale under the powers contained in the deed of trust, whereupon defendants in error brought this suit to enjoin the sale and for the balance alleged to be due them as overpayment on said debt.

The disposition required of us must depend upon the solution of two questions:

It is insisted, first, that defendants in error were affected with notice of the provision of said note for attorney's fees, because, while the deed from Shacket to Wales and said trust deed from Wales to Shacket failed to recite such provision, they nevertheless described and identified the note so that the duty of inquiry devolved upon subsequent purchasers, and that had defendants in error made the proper inquiry full knowledge would have been obtained. Second, that when said note was placed in the hands of McCormick & Spence, as hereinbefore stated, the attorney's fees became due, and a part of the indebtedness according to the tenor and effect of the note, and that plaintiff in error, therefore, had the right to insist upon the payment of attorney's fees, even though the right to enforce the asserted lien for their payment had been lost.

Upon the authority of Dalton v. Rainey, 75 Texas, 518, we find against plaintiff in error on the first question stated. In that case it was distinctly held that a subsequent vendee of land was not affected with notice of a provision for attorney's fees in a note given for the purchase money of the land where the deed of the vendor properly described the note as far as it purported to do so, but omitted such provision. It was there said: "In the absence of notice to the contrary, they (the subsequent vendees) had the right to assume that the deed to their vendor correctly stated all of the unpaid consideration for which it was executed." This seems to be in accord with the law as stated in 1 Jones on Mort., 4 ed., secs. 550, 551; Wade on Notice, 2 ed., sec. 174; Webb,

Record of Title, secs. 154, 171, and cases therein cited. We therefore conclude that the court properly declined to enforce the asserted lien.

We think the second question presented must also be determined adversely to plaintiff in error, and that the money judgment in favor of defendants in error must be sustained. The principal note was not due at the time it was placed in the hands of McCormick & Spence, unless we can say that plaintiff in error availed himself of the option therein given to so declare because of the failure to pay the installment of interest maturing June 10, 1895. There is no evidence whatever of the exercise of such option save the mere fact that the note was placed in the possession of said attorneys. Is this of such conclusive character as requires us to reverse the court's finding, in effect, to the contrary? We do not think we can give such effect to such fact. No such option had been declared in cases of previous defaults; no declaration of this purport was made after the default of June 10th by either plaintiff in error or his agent; no demand for payment was made, and the deposit of the note with the attorneys is entirely consistent with a purpose of convenience merely. The primary duty devolving upon the counsel employed was evidently the collection of the insurance policies. The application of the collection to the note was a mere exercise of the right conferred by the trust deed to abate the original indebtedness in the contingency that occurred. We think the provision in the note for attorney's fees evidently contemplated a state of the case where the note had matured and where there had been a subsequent failure or refusal to pay, and where it hence became reasonably necessary to deposit it with an attorney for collection, and where it had been so done. It was in no sense necessary that the note in question should have been deposited with McCormick & Spence. Plaintiff in error with the same advantage could have retained possession thereof. For his own security he had provided for his right to collect and receive the insurance. If collected by the attorneys and delivered to their principal, the full purpose of their employment would have been accomplished, and it would then have been the duty of plaintiff in error—a duty he owed defendants in error—to apply the amount collected upon the note without the imposition of an unnecessary burden. The right to so collect and to have the insurance so applied was a right conferred by defendants in error, and the collection of the insurance was for their benefit and in effect for them. They took out the policies, were the real beneficiaries, and the payments made out of the proceeds were in effect as if otherwise voluntarily made by them. Under these circumstances, therefore, we do not think plaintiff in error discharged the burden of proof that originally rested upon him, and, to overturn the findings of the trial court, that yet remains upon him, to show that the note mentioned had matured and had in fact, in the exercise of reasonable diligence, been deposited with attorneys for collection in accord with the spirit of said provision. Plaintiff in error best knew the fact, if so it was; he failed to so testify or produce other evidence

than as stated, and we ought not now to be required to indulge in mere inferences.

We conclude that the judgment should in all things be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.